IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BRANDI NICOLE HARRIS,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-1077

Opinion filed February 16, 2015.

An appeal from the Circuit Court for Nassau County.
Robert M. Foster, Judge.

Nancy A. Daniels, Public Defender, and Courtenay H. Miller, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Michael McDermott, Assistant Attorney General, Tallahassee, for Appellee.

WOLF, J.

     Appellant challenges her conviction and sentence for armed burglary of a dwelling, for which the trial court imposed a ten-year minimum mandatory sentence based on the jury's finding that she was in actual possession of a firearm. For the reasons discussed below, we affirm.

The victim testified she came home and discovered someone had forcibly entered her home. A jewelry box containing approximately $50,000 worth of jewelry was missing from on top of a dresser in her bedroom, and guns were missing from her bedroom closet. Officers discovered appellant's fingerprint on a drawer from the jewelry box that was left on the floor. The victim testified she received the jewelry box as a gift, still in its factory-sealed box, three years earlier. She testified the box had never left her home, and she had never given appellant permission to enter her residence. The jury found appellant guilty of burglary and found she was in actual possession of a firearm. The trial court imposed a ten-year minimum mandatory sentence based on the jury's finding that appellant actually possessed a firearm, over appellant's objection that evidence she touched the jewelry box was insufficient to prove actual possession of a firearm.

First, appellant argues the circumstantial evidence of her fingerprints on the jewelry box drawer was insufficient to rebut her hypothesis of innocence that her fingerprints could have been placed there prior to the time of the offense. We disagree. Where, as here:

> . . . the prints are located in a place, on an object, or on a particular part of an object to which the general public does not have access, the hypothesis that the print was not placed on the object at the time of the crime is not one which the court must declare reasonable as a matter of law, and it remains for the jury to determine its reasonableness. . . . [S]uch proof, standing alone, is legally sufficient, and the jury may infer from it that the print was made at the time of the crime.

Sorey v. State, 419 So. 2d 810, 813 (Fla. 3d DCA 1982).

In a factually similar case, the Fourth District found sufficient evidence of burglary where the defendant's fingerprints were found on a cash container from which money had been taken. Lewis v. State, 777 So. 2d 456 (Fla. 4th DCA 2001). The victims testified they returned home to find multiple items were missing, including a television from the living room and change rolls kept in a plastic container on the dresser in their bedroom. Id. at 457. They testified they had used the cash container for at least a year prior to the burglary, and they had never given the defendant permission to enter their home. Id. The Fourth District found evidence of the defendant's fingerprints on the cash container that had been in the constant possessions of the victims for over a year, and to which the defendant had no access, was sufficient to meet the State's burden, noting the State's evidence "need only be inconsistent with the defendant's *reasonable* hypothesis of innocence, and it does not have to conclusively rebut it." Id. at 458.

Likewise here, we find evidence of appellant's fingerprints on a jewelry box drawer that the victim received sealed from the factory years earlier, and to which the victim had not given appellant access, was sufficient to meet the State's burden.

Second, appellant argues there was insufficient evidence to support the imposition of the 10-year minimum mandatory sentence for actual possession of a

3

firearm. She argues the circumstantial evidence of her fingerprints on the jewelry box drawer was insufficient to establish that she actually possessed any of the guns that were missing from a closet in the same room. She relies on Sims v. State, 44 So. 3d 1222 (Fla. 5th DCA 2010), which held that where a victim testified there were two gunmen, but the victim did not see who fired the shots, there was insufficient evidence to support the imposition of a twenty-year minimum mandatory sentence for discharging a firearm. The court recognized "[e]vidence that a defendant discharged a firearm during the commission of a crime may be established circumstantially." Id. at 1225. In a circumstantial case, the evidence must be inconsistent with the defendant's reasonable hypothesis of innocence. Id. The Sims court found there was no evidence, either direct or circumstantial, that Sims, rather than the co-defendant, discharged the firearm. Id. As such, the court reversed for resentencing without the minimum mandatory sentence for discharging a firearm. However, the court reasoned that the result may have been different if Sims had been the only gunman. Id.

Unlike Sims, here there was evidence of only one perpetrator – appellant. Appellant's hypothesis of innocence was not that there was a second burglar who actually possessed the firearms. Instead, her hypothesis was that she had no involvement in the burglary and that she touched the jewelry box drawer prior to the incident. As discussed above, this hypothesis was rebutted by the victim's

4

testimony that she received the box sealed from the factory and had never granted appellant access to it. Thus, the circumstantial evidence of appellant's fingerprints on the jewelry box drawer was sufficient to support a finding that she took and possessed the firearms that were taken from the same bedroom during the same burglary.

The concurrence argues that, while the circumstantial fingerprint evidence was sufficient to establish that appellant actually possessed the jewelry box, it was insufficient to establish that she possessed the firearm.

Essentially, the argument is that there must be evidence directly linking a defendant to each item taken during a burglary in order to establish that the defendant took those items. However, that is not the State's burden. As noted above in Lewis, 777 So. 2d 456, the Fourth District found fingerprint evidence on a cash container was sufficient to sustain a conviction for theft of *multiple* items from different rooms in the victims' home. "Fingerprints are circumstantial evidence that a defendant committed a crime," id. at 457, and if "prints are . . . located in a place . . . to which the general public does not have access, the hypothesis that the print was not placed on the object at the time of the crime is not one which the court must declare reasonable as a matter of law, and it remains for the jury to determine its reasonableness." Sorey, 419 So. 2d at 813. Thus, the fingerprint evidence on the jewelry box was sufficient to demonstrate that

appellant took the jewelry and other items taken during the burglary, and was sufficient to overcome her hypothesis of innocence that she got her fingerprints on the box prior to the offense.

For the reasons discussed above, we find there was sufficient evidence to support the burglary conviction and the imposition of the minimum mandatory sentence for actual possession of a firearm. Thus, we AFFIRM.

LEWIS, C.J., CONCURS; MAKAR, J., SPECIALLY CONCURRING WITH OPINION.

MAKAR, J., specially concurring.

Two fingerprints on a drawer from a stolen jewelry box found at the crime scene is all that links Brandi Nicole Harris to the burglary of a dwelling at issue in this case. Harris's conviction resulted in a mandatory minimum sentence of ten years' imprisonment because firearms—in addition to the jewelry box and its contents—were missing from the home. Harris contends on appeal that the fingerprint evidence is insufficient as a matter of law to sustain the burglary charge. Even if it was sufficient to do so, Harris claims the evidence overall was insufficient to support the enhanced sentence imposed under a statute requiring proof that she "actually possess" the missing firearms.

## I.

The State's theory of the case is that Harris committed a burglary by breaking—unarmed—into a Callahan, Florida, home on a weekday during a two-hour window when the homeowner left for work at 8:15 a.m. Upon returning home at 10 a.m. to meet with an insurance adjuster about recent flood damage to the home, the owner immediately noticed the front door had been pried open. Finding her bedroom in disarray, she determined that a jewelry box she kept on a dresser (containing $50,000 of her jewelry) was gone. Her handgun and her husband's shotguns—all kept in the bedroom closet—were also missing. She testified the firearms were fully functional and in the closet when she left home that morning,

7

and that no one had permission to use or borrow them. The jewelry box had been purchased by her husband as an anniversary gift three years earlier; when it arrived from the manufacturer, it was still sealed and in its factory box. The owner said the box had never left her home.

When the police arrived, the drawer from the missing jewelry box was discovered on the bedroom floor. When dusted, it revealed latent fingerprints later determined to match those of Harris (the record is unclear on how this connection was made). None of the stolen items was ever recovered; no one saw Harris at the home; and no evidence exists that Harris was ever in the home—except for her fingerprints on the drawer. Harris did not testify, and at the close of this evidence, moved for judgment of acquittal, which was denied.

Harris was not charged with theft of the jewelry or the firearms. Instead, she was charged with and found guilty of armed burglary, which required the State to prove she "enter[ed] a dwelling, a structure, or a conveyance with the intent to commit an offense therein[,]" and during the course of committing the offense, was or became "armed . . . with explosives or a dangerous weapon." § 810.02(2)(b), Fla. Stat. As to the sentence enhancement at issue, the statute required that the State prove Harris "actually possessed" a firearm during the commission of the burglary. See § 775.087(2)(a)(1), Fla. Stat. (mandating minimum sentence enhancement where the defendant is convicted of felony and during the

8

commission of the offense, "actually possessed" a firearm); <u>Arnett v. State</u>, 128 So. 3d 87, 87 (Fla. 1st DCA 2013) (sentence enhancement must be charged and is "only applicable if the defendant is found to have been in *actual* possession of the firearm."). Based on the jury's finding of actual possession of a firearm as charged, the trial judge entered the minimum mandatory sentence of ten years. The trial court denied Harris's motion for judgment of acquittal as to the burglary conviction and the enhanced sentence, both of which rested on the sufficiency of the evidence.

## II.

Harris's challenge is reviewed de novo. <u>Fowler v. State</u>, 987 So. 2d 111, 112 (Fla. 1st DCA 2008) (denial of motion for judgment of acquittal raising the sufficiency of the circumstantial evidence on the issue of identity). The general appellate test is whether the jury could reasonably determine guilt given the evidence presented. <u>State v. Powell</u>, 636 So. 2d 138, 142 (Fla. 1st DCA 1994). But a special standard of review applies when a case is based entirely on circumstantial evidence; the special standard "requires that the circumstances lead 'to a reasonable and moral certainty that the accused and no one else committed the offense charged. It is not sufficient that the facts create a strong probability of, and be consistent with, guilt. They must be inconsistent with innocence.'" <u>Lindsey v. State</u>, 14 So. 3d 211, 214-15 (Fla. 2009) (quoting <u>Frank v. State</u>, 121 Fla. 53, 163

9

So. 223, 223 (1935)); see also Jaramillo v. State, 417 So. 2d 257, 257 (Fla. 1982) (fingerprints found on items in murder victims' home insufficient to establish involvement in murder). Where fingerprints are the only evidence, the

> determination of whether the circumstances are such that the print could have been made only at the time the crime was committed is to be made by the factfinder . . . provided the court, viewing the evidence in the light most favorable to the State, . . . first determined that a reasonable-minded jury could find the guilt of the defendant beyond a reasonable doubt.

Sorey v. Sorey, 419 So. 2d 810, 812 (Fla. 3d DCA 1982).

The present task, like that faced by the trial court, is to determine what a reasonable-minded jury might conclude on this record as to the burglary conviction and then whether Harris was in actual possession of a firearm during the burglary. The burglary conviction is discussed first, followed by the firearm possession issue.

A.

The evidence, when viewed in a light most favorable to the State, establishes that the home was broken into with intent to commit an offense therein, which constitutes burglary. Pry marks were on the door and fingerprint evidence on the jewelry box drawer found in the home established a basis for Harris's presence. The jewelry box was "brand new" when received as a gift from her husband three years earlier; it had never left the victim's home, thereby negating Harris's claim that her fingerprints could have been left on it at some earlier point.

10

Harris claimed not to have been the perpetrator, but her fingerprints on the jewelry box drawer enabled the jury to reach the reasonable conclusion that she was at the scene of the crime during the two-hour window when the burglary occurred. The testimony of the homeowner, which the jury was entitled to credit, established a forced entry of the home by means showing an intent to commit an offense therein. The jury's decision to not credit Harris's explanations for how her prints turned up on the drawer was a reasonable one; they were not given a plausible theory of innocence, at least as to the burglary charge generally. Harris presented no evidence of how her fingerprints might have gotten on the drawer when it was manufactured, nor did she present evidence that she was merely an innocuous trespasser who entered the home after the jewelry box was taken and happened to touch the drawer (her attorney argued Harris might have milled about the inside of the home and touched the drawer when it had been flooded, but no evidence to that effect was presented; plus, the flooding preceded the burglary).

Other districts have affirmed burglary convictions on similar facts. For example, in Sorey, the Third District reasoned that where fingerprints are:

> [L]ocated in a place, on an object, or on a particular part of an object to which the general public does not have access, the hypothesis that the print was not placed on the object at the time of the crime is not one which the court must declare reasonable as a matter of law, and it remains for the jury to determine its reasonableness. . . . when the State proves that the print was found in a place or on a thing not accessible to the general public, such proof, standing alone, is legally

11

> sufficient, and the jury may infer from it that the print was made at the time of the crime.

419 So. 2d at 813. Similarly, in Lewis v. State, 777 So. 2d 456 (Fla. 4th DCA 2001), the court affirmed burglary and grand theft convictions where the only evidence linking the defendant to the crime were fingerprints found on an empty Tupperware® container kept in the victims' bedroom that the owners used to store coins. The court reasoned the fingerprint evidence was sufficient to support the convictions notwithstanding the defendant's assertion he had touched the container sometime before it came into the victims' possession. The State's evidence showed that the victims had used the container for a year or more, yet the defendant's prints were not overlaid with other prints. Id. at 458. And the evidence showed the container was never in a public place where the defendant might have had access to it. Id.

That Harris's fingerprints were found on an item in a non-public place (i.e., the bedroom of a private residence) distinguishes cases finding fingerprint evidence alone to be insufficient to convict. See, e.g., Shores v. State, 756 So. 2d 114 (Fla. 4th DCA 2000) (fingerprints on box of ammunition that victim bought at a public place (a sporting goods store) two months before burglary insufficient); Seneca v. State, 760 So. 2d 995 (Fla. 4th DCA 2000) (fingerprints on battery thrown through gas station window insufficient where no evidence of who owned it or had access to it). Based on Sorey and Lewis, the trial court was correct in

12

concluding that the fingerprint evidence was sufficient to create an inconsistency with Harris's version of events that a jury must resolve. Her burglary conviction must stand.

B.

To enhance Harris's sentence required legally-sufficient proof that she "actually possessed" a firearm during the commission of the burglary. Harris argues that her enhanced statutory sentence under section 775.087(2)(a)(1) requires more than the jewelry-box-drawer fingerprints and the absence of the firearms to justify the jury's finding that she "actually possessed a firearm" during the commission of the burglary. Constructive possession is legally insufficient. See Bell v. State, 589 So. 2d 1374, 1376 (Fla. 1st DCA 1991) ("Constructive or *vicarious* possession of a firearm, although sufficient to sustain a conviction for robbery with a firearm, is insufficient to constitute possession under Section 775.087(2)."). The evidence showed that Harris had touched a drawer from the stolen jewelry box, thereby placing her inside the home during the limited time the resident was away. Her fingerprints established her identity and placed her at the crime scene holding a component of the stolen jewelry box. A reasonable inference is that Harris actually possessed the jewelry box.

But what evidence exists that she "actually possessed" one or more of the stolen firearms? None of the firearms was recovered (so could not be tested for

13

fingerprints), and no evidence was presented that Harris sold, used, or actually possessed any of them at any time. The officer who discovered the prints testified that he could not recall whether he searched for prints on any firearm-related items in the home or in or around the bedroom closet where the firearms were kept.

Harris's point is that only by inference, or improper stacking of inferences, may it be concluded that she "actually possessed" the stolen firearms during the course of the burglary for purposes of the sentence-enhancement statute. The suspicion is strong that Harris took the firearms: her fingerprints were found on a drawer of the stolen jewelry box, whose contents are gone; firearms are missing, so Harris must have taken them too. But even a strong suspicion is insufficient. Morges v. State, 33 So. 3d 115, 117 (Fla. 1st DCA 2010) ("Circumstantial evidence which creates nothing more than a strong suspicion that a defendant committed the crime is not sufficient to support a conviction."). Something more must be shown.

One approach is to apply the degree of elasticity that exists in theft cases involving only fingerprint evidence, which do not require a direct possessory linkage to each item taken to establish criminal liability. See, e.g., Lewis v. State, 777 So. 2d 456, 457 (Fla. 4th DCA 2001). But this is not a theft case (the initial grand theft charge against her for the firearms and jewelry was dropped) ; instead, it is a statutory enhancement case with severe consequences for defendants for

14

which adequate proof is presented that they "actually possessed" a firearm during the commission of specified crimes. Until now, no Florida case has extended the standard reflected in theft-only cases to the sentencing enhancement context, perhaps because it is not at all clear that the Legislature intended severe sentences based on the quantum of proof in cases such as this one.

Another approach would apply the statutory language from section 775.087(2)(a)(1) more strictly by requiring direct proof of "actual" possession of a firearm (versus possession[1] or constructive possession); Arnett, 128 So. 3d at 87. Under this approach, Harris's fingerprints found at the scene plus the fact that guns are missing raise a close question under the statute. Jurors must have sufficient evidence to conclude, in their minds' eyes, that Harris actually held in her hands at some point during the burglary at least one of the firearms that went missing.

The better approach is the latter statutorily-based one. The Legislature's demarcation between various degrees of possession suggests that it wants to

---

[1] Section 775.087 distinguishes between "actual" possession (as used in subsection 2 and elsewhere) and mere "possession," the latter having a statutory definition.

> (4) For purposes of imposition of minimum mandatory sentencing provisions of this section, with respect to a firearm, the term "possession" is defined as carrying it on the person. Possession may also be proven by demonstrating that the defendant had the firearm within immediate physical reach with ready access with the intent to use the firearm during the commission of the offense, if proven beyond a reasonable doubt.

§ 775.087, Fla. Stat. (2014).

escalate punishment where proof of possession is definitive rather than indirect or vicarious. This approach would ordinarily favor defendants in Harris's shoes who point to the thinness of evidentiary records containing fingerprints showing presence at the crime scene but nothing definitive showing actual possession of a firearm. What tips the balance against Harris in this exercise, however, is the absence of any showing that anyone other than herself could have moved the firearms. For example, Harris' theory of innocence did not include an accomplice, only that her print got on the box at some other time. But had the burglary been committed by Harris and others, it would be much more tenuous to conclude that she—rather than her co-defendant—was the one who actually took possession of the firearms (keeping in mind that constructive possession is insufficient). See Poiteer v. State, 627 So. 2d 526, 527 n.2 (Fla. 2d DCA 1993) ("Perhaps the most common occasion for improper imposition of a mandatory sentence occurs when more than one person engages in an armed felony offense, but where only one actually carries the firearm."); see also Sims v. State, 44 So. 3d 1222, 1225 (Fla. 5th DCA 2010) (enhanced sentence impermissible where shots fired into apartment could have come from two persons and the "State presented no direct or circumstantial evidence to establish" which did so). But the jury could, based on the limited facts presented, envision it was Harris alone who entered the home, left

16

her fingerprints on the jewelry box drawer, and took physical control of at least one of the firearms from the nearby bedroom closet during the intrusion.

While not painting the clearest picture of "actual possession," and presenting a close legal question, the limited record in this case was minimally sufficient to allow the jury to make this determination.